In re Kenneth R. FALKENBERG, Debtor.

Marvin A. SICHERMAN, Trustee, Plaintiff,

v.

Kenneth R. FALKENBERG, et al., Defendants.

Bankruptcy No. B91–12865. Adv. No. B91–1296.

United States Bankruptcy Court, N.D. Ohio, E.D.

Jan. 31, 1992.

**482**

Marvin A. Sicherman, Cleveland, Ohio, for plaintiff, Trustee.

Ronald N. Towne, Rachel E. Nader, Guy, Lammert & Towne, Akron, Ohio, for defendant, Bank One, Akron, N.A.

Joseph E. Marosan, Parma Hts., Ohio, Joel L. Levin, Nurenberg, Plevin, Heller & McCarthy, Cleveland, Ohio, for defendant, Kenneth M. Falkenberg.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

### I.

In this matter, the Court must determine whether a security interest exists in certain proceeds and whether a transfer of those proceeds constituted an avoidable preference. The parties have filed cross-motions for summary judgment.[1] Following a review of the pleadings, affidavits, and argu-

---

**1.** Partial summary judgment has been granted between the Plaintiff and the Trustee and all other Defendants in this multi-count adversary proceeding. The only remaining complaint al-

legation is the present allegation which is set forth in Count Five of this adversary proceeding involving the prepetition transfer received by Bank One.

ments of counsel, the following constitutes the Court's findings and conclusions.

The relevant facts are not in dispute. Prepetition, on July 11, 1988 the Debtor Kenneth R. Falkenberg (the Debtor) properly executed and delivered to Bank One, Akron, N.A. (Bank One) a promissory note in an amount of Four Thousand Dollars ($4,000.00). As collateral on the note, the Debtor granted Bank One a security interest in a 1988 Suzuki motorcycle. In 1989, the Debtor was involved in a vehicular collision which rendered the motorcycle a total loss. The Debtor filed a personal injury action in the state court to recover on personal and property damages sustained. That action resulted in a settlement on or about January 28, 1991 in which Bank One received a check in the amount of $1,960.00 from the Debtor's attorney as payment in full on the aforementioned promissory note. As the note balance was actually $1,819.86, Bank One issued its check in the amount of $140.14 to the Debtor's father, representing the overpayment on the note. The amount received by Bank One was part of the total settlement award of $23,335.07, from which the Debtor netted $11,287.05 after payment of fees and expenses.

## II.

The Debtor sought relief in this Court by filing his petition under Chapter 7 of the Bankruptcy Code on May 17, 1991. Subsequently, Marvin A. Sicherman (the Trustee) filed the present complaint for an accounting, turnover of funds from custodian, avoidance of preferential transfers, and denial of a discharge of the Debtor. In furtherance of a resolution of this action, the parties have stipulated these additional facts:

1. As of January 28, 1991, the date of the transfer complained of by the Plaintiff–Trustee, and thereafter the Debtor, Kenneth R. Falkenberg, was and remained insolvent.

2. The junk or scrap value of the 1988 Suzuki motorcycle that is and was the collateral of Bank One, Akron, N.A. from and after April 14, 1989, the date

of the collision in which the motorcycle was "totaled" is and was $25.00.

3. There was no allocation made in the Debtor's settlement with the tort-feasor and the insurance carrier of the tort-feasor with respect to the portion of such settlement that related to bodily injury, property damage, loss of earnings, medical expenses, or any of the other components of the claim made by the Debtor against the tort-feasor. (See, Stipulation of Facts, dated 12–20–91).

In seeking the above-described relief, the Plaintiff–Trustee contends that, in derogation of § 724(a) of the Code, the Debtor made a false oath or account by not including the settlement proceeds and distribution of same in his Statement of Financial Affairs. Nor did such statement reflect the amount of $4,789.07 which the Debtor received from the settlement. He further contends that the $1,960.00 prepetition payment to Bank One is an avoidable preference, as all of the elements of § 547(b) of the Bankruptcy Code have been satisfied, and that the full amount is recoverable under § 550 of the Code.

In opposing the Defendant–Bank's motion for summary judgment, the Trustee further avers that: (1) neither the Bank nor the Debtor presented evidence to indicate that the motorcycle was named for casualty loss as required under the security agreement executed between the Debtor and the Bank as further security on the note; (2) The settlement proceeds paid by the third party tort-feasor's insurance carrier are equivalent to funds being paid by the tort-feasor and are not the collateral of Bank One nor the proceeds of collateral of Bank One; (3) Provisions of U.C.C. § 9–104 excludes claims under insurance policies and claims arising in tort. (Ohio Revised Code § 1309.04(F) and (J)); and (4) No allocation was made of the settlement proceeds with respect to what portion was for personal injury, property damage, or cost of prosecution.

The Defendant–Bank One contends: (1) Its security interest in the motorcycle was perfected and constitutes a first and best

lien on the collateral, with rights superior to those of other interested parties; (2) Insurance proceeds derived from casualty loss are proceeds within the meaning of U.C.C. § 9–306 (O.R.C. § 1309.25); (3) Such proceeds are identifiable proceeds of the subject collateral; and, as such, Bank One has a right to receive the proceeds emanating from the damage and destruction of the collateral; (4) A secured party has a continuing interest in the collateral and its proceeds, regardless of sale, exchange, or other disposition of the collateral; and (5) Bank One was a fully secured creditor.

## III.

The dispositive issues are two-fold: (1) Whether the insurance proceeds paid to Bank One ($1,960.00) were collateral proceeds of the destroyed motorcycle in view of U.C.C. § 9–306; and (2) Whether the payment of the $1,960.00 portion of settlement proceeds to Bank One constituted an avoidable and recoverable preference under §§ 547(b) and 550 of the Bankruptcy Code.

## IV.

In resolving these issues relevant non-bankruptcy law must be examined. First, consideration is given to the relationship of the settlement proceeds issued by the tortfeasor's insuror that were used to pay off the note balance. Under nonbankruptcy law, "proceeds" under the Uniform Commercial Code (U.C.C.) are defined as follows:

§ 9–306: "Proceeds"

(1) "Proceeds" include whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. All other proceeds are "non-cash proceeds". U.C.C. § 9–306

▉ Ohio has adopted the Uniform Commercial Code (U.C.C.), as amended in 1972, with exceptions. Key phrases in the first sentence of § 9–306 are "Whatever is received" and "or other disposition of col-

lateral." The former phrase places no limitation on the source or nature of the proceeds in issue. The language is unambiguous. Where statutory language is unambiguous, the literal meaning of each word is to be applied. *Henry T. Patterson Trust By Reeves Banking v. United States,* 729 F.2d 1089, 1094 (6th Cir.1984); *Dow Chemical Co. v. United States Environmental Protection,* 635 F.2d 559, 561 (6th Cir.1980). In this regard, the Trustee's contention that the subject insurance must be on the collateral, itself, and not upon some other source, is unpersuasive. Similarly, the phrase "or other disposition" imposes no constraints on the nature of the disposition of the collateral. The Trustee argues that the "disposition" necessarily must involve a voluntary disposition rather than an involuntary disposition of collateral. Again, this argument is untenable due to the unambiguous language of § 9–306, coupled with the fact that a voluntary disposition of the subject collateral in the present case would be self-defeating and would provide no meaningful benefit to either the Bank, the Debtor or to the Debtor's estate. Under the U.C.C., § 1–102 requires that the language of the U.C.C. be liberally construed and applied to promote its underlying purposes and policies [§ 1–102(1)]. A literal reading of the language of § 9–306(1) subserves that policy. Thusly, the phrase "or other disposition" should not be read as having a "limiting" definition. Cases cited by the Trustee in this regard are not supportive.

Additionally, the Trustee's contention that § 9–104 of the Code excludes the payment from coverage under Article 9 is a misapplication of § 9–104. Specifically, it is noted that:

§ 9–104. Transactions Excluded From Article.

This article does not apply—

(g) to a transfer of an interest in or claim in or under any policy of insurance, except as provided with respect to proceeds (Section 9–306) and priorities in proceeds (Section 9–312);—

(K) to a transfer in whole or in part of any claim arising out of tort.

■ As determined above, the payment received by Bank One came from settlement proceeds resulting from the destruction of Bank One's collateral. It was not necessary that those proceeds issued from a policy on the collateral itself, and, accordingly, the payment received by the Bank came within § 9–306's definition of "proceeds". As such, the exceptional phrase of § 9–104(g) applies, resulting in the subject payment not being excluded from Article Nine's coverage. It is recognized that a split of authority exists over the interpretation of § 9–104(g) among the courts. One line of cases requires the existence of a direct security interest in an insurance policy on the underlying collateral. *See, e.g., In re Monroe County Housing Corp.*, 29 B.R. 686 (Bankr.S.D.Fla.1983); *In re Boyd*, 658 P.2d 470, 35 U.C.C.Rep. 669 (Okla.Sup. Ct.1983) (Bankruptcy Court for the Northern District of Oklahoma certified the question pursuant to the Uniform Certification of Questions of Law Act); *In re Hix*, 9 U.C.C.Rep. 925 (Bankr.S.D.Ohio 1969). The opposing line of thought recognizes a derivative interest in casualty insurance proceeds arising from destruction of the underlying collateral. *See, e.g., First Nat'l Bank of Bethany v. American General*, 927 F.2d 1126 (10th Cir.1991); *In re Stone*, 52 B.R. 305 (Bankr.W.D.Ky.1985); *In re Territo*, 32 B.R. 377 (Bankr.E.D.N.Y.1983); *In re Hunter*, 9 U.C.C.Rep. 928 (Bankr. S.D.Ohio 1971). In brief, the former view would exclude the claimed interest from Article Nine, while the latter would include the claimed interest under Article Nine. The latter view, presents a more reasonable approach to this problem and is followed herein. The clear language of U.C.C. § 9–104(g), under the 1972 amendments, exempts interests in insurance policies "except as provided with respect to proceeds (§ 9–306)." *See, PPG Industries, Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58 (2d Cir.1976). The court in PPG Industries held that the secured party's claim to insurance proceeds following a destruction of the underlying collateral was not exempt from Article 9 under § 9–104(g), but constituted "proceeds" under § 9–306 and thusly, provided a continuation of the pre-existing security interest in the original collateral. In the present matter, it is undisputed that Bank One held a perfected security interest in the motorcycle. Thusly, its payment received from the insuror's settlement proceeds represented a continuation of its pre-existing security interest. Under § 9–306(3)(b), a security interest in proceeds is continuously perfected if the interest in the original collateral was perfected, but ceases to be perfected ten days after receipt of the proceeds by the debtor unless a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds. Again, this point is undisputed between the parties. Casualty insurance proceeds will normally qualify as identifiable cash proceeds. *See*, U.C.C. § 9–306(2), *supra*. The Official Comments of § 9–306(1) states:

> It is clear that insurance proceeds from casualty loss of collateral are proceeds within the meaning of this section. U.C.C. § 9–306(1), Official Comment.

■ Next, the language of U.C.C. § 9–104(k) is considered. Therein, it is stated that Article 9 does not apply to a transfer in whole or in part of any claim arising out of tort. As such, the Trustee argues that Bank One's security interest is exempted from the settlement proceeds and, thusly, the $1,960.00 is recoverable by the Debtor's estate. A closer examination of § 9–104(k) reveals that the types of claims referred to under subsection (k) are limited to insurance policies which, themselves, serve as the underlying collateral. In the present case, the insurance policy was that of the third party tort-feasor and was not a specific policy covering the collateralized motorcycle. This point is made clear in the Official Comment to § 9–104(k) which provides:

> 7. Rights under life insurance and other policies, and deposit accounts, *are often put up as collateral*. Such transactions are often very special, do not fit easily under a general commercial statute and are adequately covered by existing law. Paragraphs (g) and (e) make appropriate exclusions, but provision is made for coverage of deposit

accounts and certain insurance money as proceeds. U.C.C. 9–104, Official Comment, Note 7. (Emphasis added).

The present matter, moreover, does not involve the transfer or assignment of a claim arising out of a tort. Reportedly, the theory behind the tort claim exclusion is that such transfers are far removed from ordinary commercial financing. Clark, B., *The Law of Secured Transactions Under The Uniform Commercial Code*, 1980. In this case, no claim was actually transferred. Only partial proceeds from a settlement were paid to Bank One. Thusly, the Trustee's reliance upon § 9–104(k) is misapplied. *See*, U.C.C. § 9–104, Note 8.

### V.

■ Having determined that Bank One maintained its security interest in the settlement proceeds which it received, consideration now is given to determine whether that prepetition payment is recoverable by the Debtor's estate. Under § 547(b) of the Bankruptcy Code [11 U.S.C. 547(b) ] certain prepetition transfers are avoidable and recoverable by a debtor's estate.[2] Generally, the transfer is avoidable where there was a prepetition transfer of the debtor's property or an interest in same that was made to or for the benefit of a creditor for or on account of an antecedent debt while the debtor was insolvent. Further, the transfer must have occurred within the proscribed period (within 90 days before petition filing, or between 90 days and one year before petition filing if the creditor was an insider) and allowed the transferee to receive more than it would have received if it was entitled to receive a distribution under a liquidation case. In this action, the transfer (payment to Bank One) occurred prepetition from settlement proceeds owned by the debtor and the payment was beneficial to a creditor. Based upon an examination of the Debtor's scheduled debts and liabilities, including the unscheduled settlement proceeds, the Debtor was insolvent at the time the transfer was made. On the subject note, the Debtor's father served as a guaranty. As such, the father became a contingent creditor of the Debtor's estate as he was potentially liable on the note in the event of default by the Debtor. To the extent that the Debtor made payments on the note such payments benefitted the father as they diminished the father's liability on the note. Accordingly, the father, as guarantor, was an "insider" as that term is defined under §. 101(31)(A)(i) of the Bankruptcy Code [11 U.S.C. § 101(31)(A)(i) ]. With the presence of an insider, the avoidable reach-back period extends to one year prior to filing. On or about January 28, 1991, Bank One received a check in the amount of $1,960.00 from the Debtor as payment in full on the note. The Debtor's bankruptcy petition was filed on May 17, 1991. Thusly, the transfer occurred within the allowed reach-back period. With the first four elements of § 547(b) being satisfied, the only remaining determination is whether Bank One received, by reason of the payment, more than it would have received through the distribution scheme set forth under § 726 of the Bankruptcy Code.

No evidence has been produced to refute the Bank's contention that it has a first and best lien position on the Debtor's motorcycle and was fully secured. As a result, Bank One's fully secured lien interest attached to the settlement proceeds following the destruction of its collateral, as allowed

---

**2.** 11 U.S.C. § 547. Preferences

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made—
  (A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
  (5) that enables such creditor to receive more than such creditor would receive if—
  (A) the case were a case under Chapter 7 of this title …;
  (B) the transfer had not been made; and
  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.... 11 U.S.C. 547(b)

under U.C.C. § 9–306(1). To that extent, it was impossible for Bank One to receive more than it was entitled under the § 547(b)(5) standard since it was fully secured. The overpayment of $140.14 received by Bank One was returned to the Debtor's father by Bank One prior to the bankruptcy petition filing. The five standards for avoidance of an alleged preferential transfer are in the conjunctive, and each must be established in order to render the transfer avoidable. *In re Bullion Reserve of North America,* 836 F.2d 1214 (9th Cir.1988); *Wilkie v. Brooks,* 515 F.2d 741 (6th Cir.1975). Here, that has not been achieved. The payment received by Bank One is hereby determined to be nonavoidable.

In determining the propriety of a motion for summary judgment, Rule 7056, Bankr. R., provides that such judgment shall be rendered forthwith if the pertinent pleadings, discovery documents and affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. *Lujan v. National Wildlife Federation,* —— U.S. ——, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).

Herein, the parties have filed cross-motions for summary judgment. As determined above, (1) the relevant facts are not disputed, (2) Bank One's security interest continues in the subject settlement proceeds, and (3) the payment received by Bank One does not constitute an avoidable preference as the Bank was fully secured.

Accordingly, the Plaintiff–Trustee's Motion For Summary Judgment is hereby denied. The Motion For Summary Judgment filed by Bank One is hereby granted.

IT IS SO ORDERED.