In re **WEDTECH CORP.**, Debtor.

**CEPA CONSULTING, LTD.,**
**as Liquidating Trustee,**
**Plaintiff,**

v.

**NEW YORK NATIONAL BANK,**
**INC., Defendant.**

Bankruptcy No. 86 B 12366.
Adv. No. 92–8472A.

United States Bankruptcy Court,
S.D. New York.

March 16, 1994.

L. May, of Angel & Frankel, P.C., New York City, for CEPA Consulting, Ltd. (CEPA).

G.B. Schwartz, of Hahn & Hessen, New York City, for New York Nat. Bank, Inc. (NYNB).

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRANCIS G. CONRAD, Bankruptcy Judge.*

Just before the start of jury selection and trial scheduled for January 11, 1994, we granted [1] NYNB's renewed motion for summary judgment dismissing CEPA's complaint to avoid preferential transfers aggregating $5,716,000. Our doubts about the viability of CEPA's case were first raised by NYNB's Motion for Judgment on the Pleadings, which we elected to treat as a motion for summary judgment, and denied without prejudice to NYNB's right to renew the motion just prior to trial. (TR. 26, 29, hearing date November 17, 1993). Upon review of the pleadings and exhibits submitted in preparation for trial, those doubts coalesced into a conviction that, based on the undisputed facts, CEPA would be unable to prove essential elements of its claim of preference. This Memorandum of Decision explains the rationale for our bench ruling granting summary judgment to NYNB.

### BACKGROUND

Debtor, a Bronx-based defense contractor, filed a voluntary petition for reorganization under Chapter 11 on December 15, 1986. CEPA was chosen to liquidate Debtor's assets under a liquidating Chapter 11 Plan confirmed on October 31, 1990, and brought this adversary proceeding as a part of that effort.

Debtor borrowed the $5,716,000 at issue here in a series of loans over the course of the six months preceding its filing. As CEPA alleges in its complaint, "these borrowings ... were always collateralized by cash, certificates of deposit or marketable securities pledged by" Debtor's officers or entities associated with them. (CEPA's Complaint for Recovery of Preferences and

---

* Sitting by special designation to the Southern District of New York.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. §§ 157(b)(2)(A) and (F). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable to this proceeding by F.R.Bkrtcy.P. 7052.

Related Relief, ¶¶ 15, 18, 20, 24, 25, 32; CEPA's Trial Memorandum of Law, 5.) CEPA also concedes, despite a contrary allegation in its complaint, (Complaint, ¶ 27), that at least one November loan for $700,000 was secured by a mortgage on Debtor's real property. (CEPA's Affidavit in Opposition to Motion for Judgment on the Pleadings, ¶ 8(i).)

Debtor repaid the total outstanding balance to NYNB on two different days prior to filing bankruptcy. On September 4, 1986, more than 90 days prior to its bankruptcy filing, Debtor repaid $4.1 million with proceeds from a public stock offering. (Complaint, ¶ 23; CEPA's Trial Memorandum, ¶ 7.) Debtor used the proceeds from a refinancing of the real property subject to NYNB's mortgage to pay the remaining balance, $1,616,000, on December 5, 1986, just 10 days before filing. (Complaint, ¶ 27; CEPA's Trial Memorandum, ¶ 8.) The certificates of deposit securing the repaid loans were released to their owners upon repayment by Debtor. (Joint Pretrial Order, ¶ (e)(1).) We assume, for purposes of this opinion, the truth of CEPA's allegation that about $5 million in certificates of deposit were thereupon liquidated to pay off personal loans from NYNB to the Debtor's officers who owned them. (CEPA'S Trial Memorandum, 13.)

CEPA alleges in its complaint that:

36. The Transfers were for, or on account of, antecedent debts owed by Wedtech and/or the Officers to the Defendant and which debts were either a direct or guarantee obligation of the Officers.

37. The Transfers enabled the Defendant and the Wedtech Officers to receive more than they would have received as creditors if Wedtech's case were a case under Chapter 7 [and the] Transfers had not been made and the Defendant and/or the Wedtech Officers had received payment of the debts to the extent provided by the provisions of Title 11 of the United States Code.

38. The Transfers constituted preferential payments voidable pursuant to § 547 of the Bankruptcy Code as preferences to the Wedtech Officers and as preferences to the Defendant.

39. Pursuant to § 550(a) of the Bankruptcy Code, to the extent a transfer is avoided in accordance with § 547 of the Bankruptcy Code, a debtor-in-possession may recover the property transferred from the initial transferee, the entity for whose benefit the transfer was made or any immediate or mediate transferee of such initial transferee.

It is now undisputed that Debtor's officers were not directly liable as co-makers or secondarily liable as guarantors; rather, they allowed certificates of deposit titled in their names to be used to collateralize NYNB's loans to Debtor.[2] See, Joint Pretrial Order, ¶¶ (e)(1)–(2), Exh. A, ¶¶ 16, 18, 21, Exh. B. ¶¶ 1–4. It is also indisputable that the officers are not parties to this proceeding. That circumstance deprives us of the power to determine whether, as seems highly likely, the transfers at issue were a voidable preference as to the officers, as alleged in paragraph 39. Their absence from this proceeding, as we explain below, makes application of § 550, the linchpin of CEPA's case, impossible. CEPA is left with the flaccid argu-

---

2. CEPA has consistently argued that NYNB was unsecured as to Debtor because the collateral did not belong to Debtor. See, CEPA's Memorandum in Opposition to Motion of NYNB for Judgment on the Pleadings, ¶ 3. An alternative argument, however, has fallen by the wayside. Paragraph 16 of CEPA's complaint alleged:

Upon information and belief, the collateral pledged by [Debtor's officers] was the proceeds of moneys wrongfully diverted, defalcated or stolen by these Officers from Wedtech and its creditors.

NYNB promptly hoisted CEPA on its own petard by admitting in its Answer that "any collateral pledged to NYNB as security for loans to Wedtech was · property of Wedtech and was pledged by Wedtech," (Answer, ¶ 16), and simultaneously moving for judgment on the pleadings. If Debtor pledged its own property, then no preference existed. 4 Collier on Bankruptcy ¶ 546.08 at 547–43 (15th ed. 1993); In re Falkenberg, 136 B.R. 481, 486–87 (Bkrtcy.N.D.Ohio 1992). Its theory in thin air, CEPA began backpeddling vigorously, and attempted to evade the apparent consequence of its own allegation by moving just before the scheduled trial to withdraw Paragraph 16 of its Complaint. For purposes of this opinion, who actually owned the collateral is irrelevant.

ment that, although the loans were fully collateralized, NYNB is nevertheless unsecured as to Debtor because the collateral securing the loan to Debtor was, for the most part, not Debtor's property, but belonged to Debtor's officers. That might well have mattered in a preference action against those officers, had CEPA brought one; it matters not at all in the action that actually was brought—a preference action against NYNB alone.

## DISCUSSION

To prevail on a motion for summary judgment, the movant must satisfy the criteria set forth in F.R.Civ.P. 56 as made applicable by F.R.Bkrtcy.P. 7056. F.R.Civ.P. 56 provides in part:

> [T]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Eastman Machine Company, Inc. v. United States,* 841 F.2d 469 (2d Cir.1988); *Hossman v. Spradlin,* 812 F.2d 1019, 1020 (7th Cir.1987); *Clark v. Union Mutual Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials where no genuine issue of material fact is in dispute. The Supreme Court instructed trial court judges on how to apply Rule 56 in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 214 (1986):

> [T]he judge must ask himself not whether he thinks the evidence unmistakenly favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable

jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can proceed to find a verdict for the party producing it....'

*Anderson, id.,* 477 U.S. at 252, 106 S.Ct. at 2512. We conclude, for the reasons that follow, that no fair-minded jury could return a verdict for CEPA based on the undisputed facts of this case.

■ The parties agree and the law is clear that CEPA bears the burden of establishing each of the elements of a preferential transfer. § 547(g); *Sapir v. Keene Lumber Co., Inc. (In re Ajayem Lumber Corp.),* 143 B.R. 347, 351 (Bkrtcy.S.D.N.Y.1992). Those elements are set out in § 547(b), which provides, in pertinent part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

CEPA concedes that NYNB is not an insider. (CEPA's Trial Memorandum, 13.) An essential element of a preference to a non-insider is that the transfer be made within the 90 days immediately preceding commencement of the bankruptcy case. § 547(b)(4)(A). The $4.1 million transfer on

September 4, 1986 was made more than 90 days prior to Debtor's filing. Thus CEPA is unable to prove an essential element of its case as to that transfer, which is, accordingly, not a preference.

■ The undisputed facts also establish that neither the September 4, 1986 transfer nor the December 5, 1986 transfer gave NYNB more than it would have received in a Chapter 7 liquidation, which § 547(b)(5) makes an essential element of a preference action. As noted above, it is undisputed that the loans at issue were fully collateralized. CEPA argues, nonetheless, that NYNB is unsecured as to Debtor because the collateral belonged to third parties—Debtor's officers and their, related entities.

The fact that Debtor didn't own the collateral, CEPA argues without reference to any authority, makes NYNB unsecured as to Debtor because an essential element required to perfect a security interest under NYUCC § 9–203(1) is that "the debtor has rights in the collateral." The definition of "debtor" in NYUCC § 9–105(1)(d) vitiates this argument:

> "Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral. . . . Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision . . . dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

Because NYUCC § 9–203(1) is incontestably a "provision . . . dealing with the collateral", its reference to "debtor" means "the owner of the collateral".

■ In any event, whether or not Debtor here owned the certificates of deposit, it certainly had rights in the collateral sufficient to make NYNB fully secured within the meaning of § 506(a), which defines secured claims in bankruptcy:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's

interest in the estate's interest in such property. . . .

This conclusion ineluctably follows from analysis of § 547(b)(5), which requires CEPA to establish as an essential element of its case that NYNB got more by virtue of Debtor's prepetition repayment than it would have received from payments in a hypothetical Chapter 7 liquidation. *Falkenberg, supra,* 136 B.R. at 486–87.

The undisputed facts establish that in a hypothetical Chapter 7, the value of the estate's interest in the certificates of deposit collateralizing the loans would be equal to the outstanding balance of the loans. The officers' certificates of deposit clearly collateralized NYNB's loans to Debtor. (Joint Pretrial Order, ¶¶ (e)(1)(1)–(2), Exh. A, ¶ 21, Exh. B, ¶¶ 2–4.) The loan documentation included hypothecation agreements in which the collateral owners pledged their certificates of deposit to NYNB "as security for each and every liability, direct or contingent, joint, several, or independent, of Wedtech Corp." The agreements also provided that:

> The provisions of any agreement, whether heretofore or hereafter made by [Debtor] with [NYNB], regarding disposition of collateral for any such liability shall apply to the disposition, as collateral therefor, of the hypothecated property or the proceeds thereof, exactly as if the hypothecated property were owned and had been pledged by [Debtor] for such liability.

(CEPA's Affidavit in Opposition to Motion for Judgment on the Pleadings, ¶¶ 13–14, Exh. H.) Thus, the hypothecation agreement itself would authorize Debtor, in a hypothetical Chapter 7, to satisfy NYNB's claim in full by surrender of the collateral, and retain its own assets for distribution to other creditors. Such a disposition of the collateral is not only permitted by the agreement, but, unless Debtor paid off the loans, would be required by the Code prior to final distributions of estate property. *See,* § 362(d), § 725.

Thus, NYNB would have received payment in full of its loans to Debtor in a Chapter 7 case, even if the subject transfers had not been made. Accordingly, CEPA's preference action against NYNB fails as to both

the September 4 and December 5 transfers because, on the undisputed facts of this case, NYNB would have received payment in full of its loans to Debtor. CEPA is thus unable to establish an essential element of its case. § 547(b)(5).

CEPA, however, argues that § 550 authorizes it to recover against NYNB as the initial transferee of a voidable transfer for the benefit of the Debtor's officers who owned the collateral. The record before us strongly suggests that the transfers in question here did in fact significantly benefit Debtor's officers.[3] Had the loans not been repaid out of Debtor's funds prior to commencement of the bankruptcy case, the officers' collateral would have been liquidated to repay NYNB's loans to Debtor, and would have been unavailable to them to pay off their own individual indebtedness to NYNB. Debtor's own funds would then have been available for distributions to other creditors. The test of § 547(b)(5), however, is not whether the estate got less, but whether the transfer "enables such creditor to receive more" in repayment of the antecedent debt.

As CEPA argues, § 550 in some cases permits recovery of preferences benefiting some creditors from parties who weren't themselves preferred. By its own terms, however, § 550 is available only "to the extent that a transfer is avoided." *See, Official Unsecured Creditors Committee v. U.S. National Bank of Oregon, supra,* 2 F.3d at 980 (9th Cir.1993) (§ 550(a) identifies party responsible for repayment of preference after one first has been established under § 547(b)); *Travellers Insurance Co. v. Cambridge Meridian Group, Inc.,* 980 F.2d 792, 799 (1st Cir.1992) (avoidable preference must first be established against insider before § 550 can be used to recover from initial transferee). CEPA puts the cart before the horse by attempting to recover from NYNB as initial transferee without first proceeding against the officers to establish an avoidable transfer. A determination in this action that Debtor's officers had been preferred would subject them to liability for the amount of the avoided transfer, both directly to the estate, § 550(a), and, we presume, to NYNB for any amounts which CEPA recovered from NYNB. We are unable to make such a determination because the officers are not defendants in this action, and because CEPA has not asked us to determine that the transfers constituted avoidable preferences as to them. The only relief requested in its complaint was against NYNB.

For the foregoing reasons, we grant summary judgment to NYNB and dismiss CEPA's complaint to avoid preferential transfers. Counsel for NYNB shall settle an order on five days' notice to CEPA.

---

**3.** Whether, even despite the apparent benefit, the transfers were avoidable preferences, is an open question we need not decide today. We note merely that the loan documentation in evidence affords no basis for any claim by the officers against Debtor in the event Debtor had defaulted and NYNB had liquidated the officers' certificates of deposit. Debtor did not agree to indemnify the officers. The officers did not provide a guaranty, which would give rise to a subrogation claim. Rather, they merely put up the collateral. Section 547(b) authorizes avoidance of transfers "to or for the benefit of a creditor." "Creditor" is defined by § 101(10)(A) as an "entity that has a claim against the debtor." *See, Southmark Corp. v. Southmart Personal Storage, Inc.,* 993 F.2d 117, 120–21 (5th Cir.1993) (payment not insider preference, despite benefit to insider, because insider had no claim against debtor on account of debt paid); *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio),* 874 F.2d 1186, 1191–92 (7th Cir.1989) (payments to IRS not insider preferences because although insider benefited by elimination of responsible person liability, insider had no claim against debtor with respect to tax debts). *See also Official Unsecured Creditors Committee of Sufolla, Inc. v. U.S. National Bank of Oregon (In re Sufolla, Inc.),* 2 F.3d 977, 983–84 (9th Cir.1993) (Court notes possibility that lenders may compel guarantors to waive claims back against debtors, thereby making guarantors not "creditors" of the debtor, and protecting lenders against liability as transferee of preference for benefit of guarantors).