In re WEDTECH CORP. f/k/a Welbilt Electronics Die Corp., Debtor.

CEPA CONSULTING, LTD., as Liquidating Trustee for the Liquidating Trust of Wedtech Corp., Plaintiff–Appellant,

v.

NEW YORK NATIONAL BANK, Defendant–Appellee.

Nos. 94 Civ. 3803 (MGC), 94 Civ. 3804 (MGC).

United States District Court, S.D. New York.

Sept. 14, 1995.

Angel & Frankel by Laurence May, Robert A. Abrams, New York City, for Plaintiff–Appellant.

Hahn & Hessen by Gabriel B. Schwartz, David M. Posner, Irwin Underweiser, New York City, for Defendant–Appellee.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

This is an appeal from an award of summary judgment to New York National Bank (the "Bank") in an adversary proceeding in the bankruptcy court. CEPA Consulting, Ltd. ("CEPA") appeals from the bankruptcy court's determination on two grounds. First, appellant contends that a payment made in satisfaction of bank loans several days before the filing of the debtor's Chapter 11 petition was an avoidable transfer under 11 U.S.C. § 547(b) because the loans were not secured as to the debtor. Second, appellant argues that the debtor's repayment of bank loans more than 90 days before the filing of the petition is recoverable under 11 U.S.C. §§ 547(b)(4)(B) and 550(a) because the payment was made for the benefit of insiders. The Bank cross-appeals on the ground that the bankruptcy court erred in denying it leave to amend its answer to assert a statute of limitations defense which, it contends, would have been a frivolous defense under the law prevailing at the time of its original answer.

### Facts

On December 15, 1986, Wedtech Corp. filed a voluntary petition for reorganization under Chapter 11. *In re Wedtech Corp.*, 165 B.R. 140, 141 (Bankr.S.D.N.Y.1994). During the prior six months, Wedtech had borrowed $5,716,000 from the Bank in a series of loans.

*Id.* All of the loans were secured by cash, certificates of deposit or marketable securities pledged by Wedtech's officers or entities associated with them. *Id.* Of the amount borrowed, $700,000 was secured by real property in Wedtech's possession. *Id.* at 142.

On September 4, 1986, Wedtech made payments of $4.1 million to the Bank with the proceeds of a public stock offering. *Id.* On December 5, 1986, the debtor paid the remaining balance of $1,616,000 with the proceeds of a refinancing of the real property subject to the Bank's security interest. *Id.*

CEPA was chosen to liquidate the debtor's assets under a liquidating Chapter 11 plan confirmed on October 31, 1990. *Id.* at 141. On February 12, 1992, CEPA filed an adversary proceeding in the bankruptcy court to recover the payments to the Bank as preferential transfers. The Bank filed its answer on April 13, 1992. After the proceeding had been scheduled for trial, on October 4, 1993, the Bank moved to amend its answer to add the affirmative defense of statute of limitations. The bankruptcy court denied the Bank's motion as untimely, and also on substantive grounds. The Bank then moved for judgment on the pleadings. The bankruptcy court treated the motion as one for summary judgment, and denied it without prejudice to the Bank's right to renew the motion before trial. On January 11, 1994, the bankruptcy court granted the Bank's renewed motion for summary judgment. *See In re Wedtech Corp.,* 165 B.R. 140 (Bankr.S.D.N.Y.1994).

### Discussion

#### The December Transfer

The December repayment was made within 90 days of the filing of the petition, and therefore would be an avoidable transfer under 11 U.S.C. § 547(b) if it enabled the Bank to receive more than it would have received in a Chapter 7 liquidation. *See* 11 U.S.C. § 547(b)(4) & (5); *In re Auto-Train Corp.,* 49 B.R. 605 (D.D.C.1985), *aff'd,* 800 F.2d 1153 (D.C.Cir.1986); *In re Falkenberg,* 136 B.R. 481, 486–87 (Bankr.N.D.Ohio 1992). The bankruptcy court found that CEPA had not shown that the Bank had received an avoidable preference because the

loans were fully secured, and, in a hypothetical Chapter 7 liquidation, Wedtech would have been permitted to satisfy the loans owed to the Bank by surrendering the collateral pledged by Wedtech's officers. *See* 165 B.R. at 144.

The bankruptcy court's decision rests on a restrictive reading of Section 547(b) and a strained reading of the pledge agreement to conclude that the debtor had some interest in the collateral because the collateral could be used to repay the loans without creating any liability to the third-party owners of the collateral. Courts have held that when a debt is secured by collateral pledged by a third party, the security interest does not give rise to a secured claim against the debtor's estate. *See In re Santoro Excavating, Inc.,* 32 B.R. 947 (Bankr.S.D.N.Y.1983) (debtor's payment of loan secured by treasury bills pledged by debtor's principals was avoidable preference because lender was not secured as to debtor's estate); *see also In re Virginia–Carolina Financial Corp.,* 954 F.2d 193, 198–99 (4th Cir.1992); *In re Emergency Beacon Corp.,* 48 B.R. 341, 353 (Bankr.S.D.N.Y. 1985); *In the Matter of Formed Tubes, Inc.,* 41 B.R. 819 (Bankr.E.D.Mich.1984).

Section 547(b) allows the trustee to avoid a payment to a creditor made on a preexisting debt within 90 days before the date of the filing of the petition if it "enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5). Although a literal interpretation of the statute could lead to the conclusion reached by the bankruptcy court, "[w]here the result of a literal interpretation of statutory language is absurd, or where the obvious purpose of the statute is thwarted by such slavish adherence to its terms, [the court] may look beyond the plain language" of the statute. *Grand Light & Supply Co. v. Honeywell, Inc.,* 771 F.2d 672, 677 (2d Cir. 1985).

The bankruptcy court's decision rested on the fact that the Bank received the same amount of money from the December repay-

ment that it would have received in a Chapter 7 liquidation if the loans had not been repaid. In that sense, the Bank did not receive "more" than it would have received in a Chapter 7 liquidation. However, if the loans had not been paid, the Bank would have received the pledged property belonging to the officers and their associates, and not the debtor's property. Thus, Wedtech's repayment to the Bank did allow the Bank to receive *property of the debtor* that it would not have received in a Chapter 7 liquidation.

■ When the loans were repaid, the collateral was released to the third party owners of the collateral, not to the debtor. Treating such a transaction as authorized by the statute would permit a debtor to prefer a "secured" creditor without any corresponding benefit of release of collateral to the debtor's estate for distribution to other creditors. This result is inconsistent with the purpose of preference avoidance, which is to provide for equal distribution of the debtor's estate. *See In re Santoro*, 32 B.R. at 949 (where bank received $20,000 from debtor's estate, "unsecured creditors could draw no comfort from [the bank's] contemporaneous release of $20,000 in collateral because the collateral was not the property of the estate and was not released to the debtor"); *Formed Tubes*, 41 B.R. at 821.

■ The bankruptcy court also rested its decision on the fact that the third-party collateral had been pledged according to a "hypothecation agreement" under which the Bank could dispose of the collateral "exactly as if the hypothecated property were owned and had been pledged by [Wedtech]." (R. 350.) The bankruptcy court relied on 11 U.S.C. § 506(a) which defines secured claims in bankruptcy:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.

The bankruptcy court reasoned that the hypothecation agreement gave Wedtech an interest in the collateral equal to the outstanding balance of the loans. However, the hypothecation agreement did not give Wedtech a genuine interest in the collateral. This provision was strictly for the Bank's protection and did not make any property available to Wedtech. If Wedtech had not repaid the loans, the Bank could have disposed of the collateral "as if" the collateral were pledged by Wedtech; but once Wedtech repaid the loans, the collateral was released to the pledgors. For the same policy reasons discussed above regarding the interpretation of Section 547(b), I hold that the hypothecation agreement did not create a secured claim against the debtor's estate that survived repayment of the loans.

■ There is a dispute in this case as to who owned the collateral. The Bank points out that CEPA originally pleaded in its complaint that "the collateral pledged by [the debtor's officers] was the proceeds of moneys wrongfully diverted, defalcated, or stolen by these officers from Wedtech and its creditors." (Compl. ¶ 16.) The Bank admitted in its answer that "any collateral pledged to [the Bank] as security for loans to Wedtech was property of Wedtech and was pledged by Wedtech." (Answer ¶ 16.) The Bank then moved for judgment on the pleadings, since, if the debtor pledged its own property, no preference existed. *See In re Santoro Excavating Inc.*, 32 B.R. at 948. CEPA moved to withdraw paragraph 16 of its complaint shortly before the bankruptcy court granted summary judgment to the Bank. The court held that it made no difference who owned the collateral under the other facts presented. *See* 165 B.R. at 142 n. 2.

Additionally, the Bank points to assignment documents, which the officers appear to have signed in their capacity as officers of Wedtech, as evidence that the collateral was owned by the debtor, rather than by the officers. The Bank argues that these documents refute CEPA's argument that Wedtech did not have any interest in the collateral. *See In re Advanced Turbo Products, Inc.*, 126 B.R. 630, 631 (Bankr.S.D.Fla.1991) (debtor estopped from arguing it did not own collateral where security agreement for loan listed the property as belonging to debtor and debtor represented that it owned the property pledged as security). CEPA responds that not all of the assignment documents were executed on behalf of the debtor,

and even if they were, the debtor cannot assign property that it does not own.

Because there are genuine issues of fact with respect to the ownership of the collateral and whether therefore, the Bank would have received less in a Chapter 7 liquidation than it did through the pre-petition payments, it was error for the bankruptcy court to grant summary judgment to the Bank on the December payments.

*The September Transfers*

■ CEPA argues that the extended preference period should apply to allow it to recover the September repayments under 11 U.S.C. § 547(b)(4)(B) and § 550(a) because the loan repayments reduced the liability of "insiders" of the debtor. CEPA cites several decisions which allowed recovery of payments to creditors which served to reduce the liability of corporate insiders during the extended preference period. *See Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186 (7th Cir.1989); *In re Sufolla, Inc.*, 2 F.3d 977 (9th Cir.1993); *In re Robinson Bros. Drilling, Inc.*, 892 F.2d 850 (10th Cir.1989); *In re C–L Cartage Co.*, 899 F.2d 1490 (6th Cir.1990); *In re T.B. Westex Foods, Inc.*, 950 F.2d 1187 (5th Cir.1992).

Under the *Deprizio* line of cases, there is little doubt that CEPA would be allowed to recover payments made to an outside creditor during the extended preference period if the transfers benefitted an inside creditor.[1] However, since the Second Circuit has not ruled on the issue of whether the joint application of Sections 547(b)(4)(B) and 550(a) permits recovery from a non-insider creditor

of a payment that benefitted an insider, the Southern District is not bound to follow that line of cases. In the only case in the Southern District of New York in which the question has been considered, the judge chose not to follow *Deprizio* because "as a policy matter, ... the [*Deprizio* ] rule would likely impede the availability of credit to ailing businesses." *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 425 (S.D.N.Y.1990).

Courts and commentators have questioned the wisdom of the *Deprizio* rule. *See In re Erin Food Services, Inc.*, 980 F.2d 792, 797– 99 (1st Cir.1992); 4 Collier on Bankruptcy ¶ 550.02 (15th ed. 1988); Henk J. Brands, Note, The Interplay Between Sections 547(b) and 550 of the Bankruptcy Code, 89 Colum.L.Rev. 530 (1989). The traditional reason for rejecting the *Deprizio* rule is that it places creditors who receive guarantees in a worse position than creditors who do not receive guarantees since only the creditors who have guarantees will be required to disgorge under Section 550(a). Thus, creditors are faced with a "catch–22" of either not taking a guarantee and risking nonpayment, or taking a guarantee and risking that payments made by the debtor will be recoverable under Section 550(a). *See* Robert J. Rosenberg et al., Avoidance of Preferences and Fraudulent Transfers; Uniform Fraudulent Transfer Act *in* Practicing Law Institute, Bankruptcy Developments for Workout Officers and Lenders Counsel (1990).

Courts have used different approaches to avoid the *Deprizio* rule. *Compare In re Beck Builder Inc.*, 34 B.R. 888, 894 (Bankr. W.D.Pa.1983) (invoking "equitable powers" to

---

1. The bankruptcy court questioned whether the insiders who received the benefit in this case could be considered "creditors" under Section 547(b). "Creditor" is defined by 11 U.S.C. § 101(10)(A) as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(5)(A) defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Congress intended this definition to be "the broadest possible definition." *In re Robinson*, 776 F.2d 30 (2d Cir.1985) (quoting House Report accompanying legislation). The bankruptcy court noted that the loan documents did

not provide for indemnification or subrogation. CEPA argues that a subrogation claim arises when one person pays the debt of another. *See* 23 N.Y.Jur.2d, Contribution, Indemnity, Subrogation § 25. Therefore, according to CEPA, the officers had contingent subrogation claims against Wedtech that would arise in the event that Wedtech defaulted on the loans. The Bank argues that subrogation is not allowed in a case such as this one in which the officers misappropriated the debtor's property. *See id.* § 35, at 56–57. It makes no difference whether the officers are considered "creditors" for the purpose of Section 547(b), since the bankruptcy court correctly refused to apply the *Deprizio* doctrine in this case.

avoid literal application of section 550(a)(1)) *with In re Mercon Indus.*, 37 B.R. 549 (Bankr.E.D.Pa.1984) (payment to creditor of debt guaranteed by insider constituted two transfers: only the one to the guarantor could be avoided) *and In re Midwestern Cos.*, 102 B.R. 169 (W.D.Mo.1989) (general language of § 550(a) should be subordinated to more specific language of § 547(b): distinction between insider and non-insider creditors should remain intact).

It is doubtful that Congress considered the interaction of Sections 547(b) and 550(a) when it enacted the Bankruptcy Code. While it seems clear that Congress intended to create an additional source of recovery for the trustee, it is unclear that Congress meant to eradicate the distinction between transfers to insiders and transfers to non-insiders set out in Section 547(b). *See* Brands, supra, at 541–49 (arguing that close examination of legislative history shows that Congress did not consider the situation in which the payment was made to a non-insider for the benefit of an insider outside of the 90–day preference period).

Additional evidence that *Deprizio* and cases that have followed it may not have correctly read Congress' intention regarding the interaction of the two sections of the Bankruptcy Code is a statute enacted on October 22, 1994. That statute amends Section 550 to add a new subsection (c) that provides: "If a transfer made between 90 days and one year before the filing of the petition (1) is avoided under section 547(b) of this title; (2) was made for the benefit of a creditor that at the time of such transfer was an insider; the trustee may not recover under subsection (a) from a transferee that is not an insider." Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (1994). Although the new law is only to be applied prospectively, Congress' action suggests that the courts were not applying the Code as Congress intended. *See In re Artha Mgmt., Inc.*, 174 B.R. 671, 677 (Bankr. S.D.N.Y.1994) (viewing the Reform Act as a clarification of section 550 and refusing to apply *Deprizio* to avoid transfer made to non-insider during the extended preference period even though Reform Act did not apply to action which was brought before effective date of Act).

Therefore, I hold that the bankruptcy court correctly refused to apply the *Deprizio* rule, and its award of summary judgment as to the September transfers is affirmed.

*Statute of Limitations Defense*

■ The Bank cross-appeals from the denial of its motion for leave to amend its answer and contends that the bankruptcy court abused its discretion in refusing to allow amendment of the answer to add a statute of limitations defense. CEPA responds that the bankruptcy court properly denied the Bank leave to amend because the Bank's motion to add the statute of limitations defense came 18 months after its answer was filed.

The Bank argues that at the time it filed its answer, the only judges who had decided the matter in the Southern District of New York[2] (and many courts of other jurisdictions)[3] had held that the two year statute of limitations for a proceeding under Section 547 of the Bankruptcy Code did not begin to run until a trustee was appointed.[4] In 1993,

---

**2.** *See In re Korvettes, Inc.*, 67 B.R. 730 (S.D.N.Y. 1986); *In re McLean Indus.*, 132 B.R. 247 (Bankr.S.D.N.Y.1991); *In re Alithochrome Corp.*, 53 B.R. 906 (Bankr.S.D.N.Y.1985).

**3.** *See, e.g., In re Pullman Constr. Indus.*, 132 B.R. 359 (Bankr.N.D.Ill.1991); *In re Jet Florida System, Inc.*, 73 B.R. 552 (Bankr.S.D.Fla.1987); *Steel, Inc. v. Windstein,* 55 B.R. 426 (Bankr. E.D.La.1985); *Matter of Choice Vend, Inc.*, 49 B.R. 719 (Bankr.D.Conn.1985); *In re One Marketing Co.*, 17 B.R. 738 (Bankr.S.D.Tex.1982).

**4.** Until October 22, 1994, 11 U.S.C. § 546(a) provided:

[a]n action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—
  (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
  (2) the time the case is closed or dismissed. The revised statute enacted on October 22, 1994 amends Section 546(a)(1) to read "the later of (A) two years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or election occurs before the expiration of the period specified in subparagraph (A)."

the Ninth Circuit rejected the prevailing interpretation of the statute of limitations in *In re Softwaire Centre Int'l, Inc.*, 994 F.2d 682 (9th Cir.1993). The Second Circuit has recently adopted the Ninth Circuit's reasoning and held that the statute of limitations begins to run for a debtor in possession when the petition is filed. *See In re Century Brass Prods., Inc.*, 22 F.3d 37 (2d Cir.1994).

The bankruptcy judge stated in open court that he was denying the motion on both procedural and substantive grounds. He stated: "Procedurally, I think you have come too late. I think you should have raised your affirmative defense and the Statute of Limitations when you served your Answer.... I think it should have been raised, and I think it's much too late to raise that affirmative defense. You are required to do that and you didn't." (R. 438.) As to the substantive grounds, the judge stated that he found the *Softwaire* decision to be "entirely without merit." (R. 438.)

■ Although the bankruptcy court's substantive assessment is in error since the Second Circuit has adopted the reasoning of *Softwaire*, it was not an abuse of discretion for the bankruptcy court to deny the motion to amend the answer on procedural grounds. Fed.R.Civ.P. 8(c) requires a defendant to "set forth affirmatively" the affirmative defense of statute of limitations in its answer.[5] The statute of limitations defense must be asserted in a party's responsive pleading "at the earliest possible moment" and is waived if not promptly pleaded. *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir.1987); *MEI Int'l, Inc. v. Schenkers Int'l Forwarders, Inc.*, 807 F.Supp. 979, 990 (S.D.N.Y.1992) (failure to raise statute of limitations defense prior to post-trial briefs constitutes waiver).

The bankruptcy court rested its decision on the fact that the Bank had made no attempt to assert the statute of limitations affirmative defense until after the adversary proceeding was called for trial, and at a time by which the trial would have been completed if jury trials had not been delayed by a budgetary shortfall. (Tr. of Proc., Nov. 17, 1993, at 14.) The bankruptcy court noted at oral argument of the motion that there was authority for asserting the statute of limitations defense at the time that the Bank filed its answer. (*Id.* at 4.) In fact, at the time defendant filed its answer, at least four cases had held that the two year statute of limitations applied to debtors-in-possession. *See Zilkha Energy Co. v. Leighton*, 920 F.2d 1520 (10th Cir.1990); *In re Sparmal Enterprises, Inc.*, 126 B.R. 559 (S.D.Ind.1991); *Matter of Coastal Group, Inc.*, 125 B.R. 730 (Bankr.D.Del.1991); *In re Lill*, 116 B.R. 543 (Bankr.N.D.Ohio 1990). Because the Bank did not show good cause for its long delay in asserting a statute of limitations affirmative defense, the bankruptcy court's denial of the Bank's motion to amend is affirmed on procedural grounds.

*Conclusion*

For the foregoing reasons, the decision of the bankruptcy court is affirmed in part and reversed in part.

SO ORDERED.

---

**5.** Rule 8(c) applies in adversary proceedings in the bankruptcy court. *See* Fed.R.Bankr.P. 7008.