**In re CRAFTS PLUS+, INC., Debtor.**

**CRAFTS PLUS+, INC., Plaintiff,**

**v.**

**FOOTHILL CAPITAL CORP., Defendant.**

**Bankruptcy No. 97–51672–C.
Adversary No. 98–5012C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

April 15, 1998.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the First Amended Motion for Summary Judgment ("Motion") of Defendant Foothill Capital Corporation (alternatively "Defendant" and "Foothill") in the above-styled adversary proceeding. Upon review of the written pleadings, oral arguments, and record on summary judgment, we conclude that summary judgment should be denied.

### *Factual and Procedural Background*

The Defendant is a secured creditor of Ben Franklin Stores, Inc. ("BFSI"), which filed a chapter 11 petition on July 26, 1996. At that time, BFSI was indebted to Foothill for approximately $30,000,000. Meanwhile, Crafts Plus+, Inc. (alternatively "Crafts Plus," "Debtor," or "Plaintiff"), the Plaintiff in the instant adversary matter and Debtor in the underlying bankruptcy proceeding, owed to BFSI over $16,000,000. On or about December 19, 1996, as part of the BFSI bankruptcy, Crafts Plus and BFSI concluded a restructuring agreement ("the Agreement") pursuant to which Crafts Plus was to transfer funds to an account designated by BFSI and to issue a new promissory note in favor of BFSI. Then, on December 30, 1996, Crafts Plus made two wire transfers totaling $5,000,000 from Norwest Bank to an account at Chase Manhattan Bank held by Foothill, in partial satisfaction of Crafts Plus' obligations under the Agreement. Crafts Plus then filed its chapter 11 petition on March 28, 1997. Since then, and since the commencement of this adversary proceeding, Crafts Plus has been converted to a chapter 7 proceeding and a trustee has been appointed. Through this adversary matter, the estate seeks to avoid and recover, pursuant to 11 U.S.C. §§ 547 and 550, the $5,000,000 transferred to Foothill. The Defendant Foothill has moved for summary judgment,

arguing that, because Foothill was never a creditor of Crafts Plus and because the transfer has not been antecedently avoided, it is entitled to judgment as a matter of law.

### Legal Issues

#### STANDARD ON SUMMARY JUDGMENT

First we revisit the standard for a motion for summary judgment, which this court addressed in *Scott v. Resolution Trust Corp.*, 157 B.R. 297 (Bankr.W.D.Tex.1993) (op. withdrawn on other grounds). There, we concluded that summary judgment is appropriate if the movant establishes that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). But the burden shifts quickly from the movant to the non-movant. In *Catrett*, the Supreme Court found "no express or implied requirement...that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553. That is, once the moving party has made its motion for summary judgment, the burden effectively shifts to the opposing party to establish a genuine issue of material fact. The non-moving party must then support each of the challenged essential elements of the case for which he or she will bear the burden of proof upon trial. *Scott*, 157 B.R. at 308. Accordingly, "Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

For our purposes, therefore, the relevant evidence is not to be found in the pleadings but in the affidavits, depositions and exhibits that are part of the record. The nonmovant must show that there are "genuine factual issues that can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (likening the standard on summary judgment to the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The role of this court at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Finally, it should be noted that, "[a]s to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

#### SUBSTANTIVE LAW AND RECORD ON SUMMARY JUDGMENT

Foothill has advanced several arguments in support of its Motion. First, Foothill asserts that, because it was not a creditor of Crafts Plus, it cannot be the object of this avoidance and recovery action. Second, Foothill argues that Crafts Plus' action must fail because it has not avoided the transfer as to BFSI.

We first note that, given the general structure of 11 U.S.C. §§ 547 and 550, it appears that § 547 focuses on transfers, while § 550 focuses on transferees. *See In re C–L Cartage Co., Inc.*, 899 F.2d 1490, 1493 (6th Cir. 1990); *In re Marilyn Steinberg Enters., Inc.*, 141 B.R. 587, 591, 595–96 (Bankr.E.D.Pa. 1992); *citing Levit v. Ingersoll Rand Financial Corp. (In re Deprizio)*, 874 F.2d 1186, 1195 (7th Cir.1989) ("Sections 547 and 550 both speak of a transfer being avoided; avoidability is an attribute of the transfer rather than of the creditor.").[1]

---

1. In reaching our decision, we have reviewed, commented on, and drawn from *Deprizio*. We recognize that the central holding and effect of *Deprizio* has been overruled legislatively by the enactment in 1994 of 11 U.S.C. § 550(c). The truly active ingredient in *Deprizio*, which generated considerable debate between 1989 and 1994, was its holding that a trustee could recover from a non-insider initial transferee transfers made *for the benefit of* an insider creditor between ninety days and one year prior to the debtor's petition date. While many courts followed the Seventh Circuit's rationale in *Deprizio*, others applied one or a combination of theo-

11 U.S.C. § 547(b) focuses neither on creditors nor on transferees, but instead on transfers: "Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property . . ." 11 U.S.C. § 547(b). § 547 then lists a number of criteria defining what sort of transfer may be avoided. Again, these criteria modify the term "transfer;" they do not refer to the party against whom the avoidance action is prosecuted. § 550 then defines the party from whom the trustee may seek recovery of the property transferred or its value. Specifically, the trustee may recover from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." The House and Senate Report to the Reform Act of 1978 observes that "Section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the *concepts* of avoiding a transfer and recovering from the transferee." HR Rep No. 595, 95th Cong, 1st Sess 375–376 (1977); S Rep No. 989, 95th Cong, 2d Sess 90 (1978) (italics added); *see also In re Sufolla*, 2 F.3d 977, 980 (9th Cir.1993); *In re Erin Food Services, Inc.*, 980 F.2d 792, 797 (1st Cir.1992); *Matter of Westex*, 950 F.2d 1187, 1193 (5th Cir.1992).

## A) MUST FOOTHILL HAVE BEEN A CREDITOR OF CRAFTS PLUS?

■ Foothill first claims that it was not a creditor of Crafts Plus, and that it therefore cannot be subject to this action. A straightforward reading of the Code does not support this argument. § 547(b) allows the avoidance of transfers "to or *for the benefit of*" a creditor. § 550, which governs liability for avoided transfers, allows recovery from the initial transferee or from the entity for whose benefit the transfer was made. These sections require neither that the transfer, in order to be avoided, be only *to* a creditor, nor that the avoided transfer be recovered only from a creditor. *See In re Marilyn Steinberg Enters., Inc.*, 141 B.R. at 594 ("[T]he

language of subsection 547(b)(1) is explicit that a transfer falls within the ambit of section 547(b) even if made to a noncreditor, so long as a creditor benefits from the transfer.").

The closest thing that might be found to a requirement that the transferee must be a creditor might be the requirement that the debt underlying the transfer must be the same debt subject to the benefitted creditor's "claim" against the debtor. *Matter of Southmark Corp.*, 993 F.2d 117, 119 (5th Cir.1993) ("the Code permits recovery only if the transfer is related to the preferred creditor's claim"). *Southmark* involved a debtor, Southmark, guaranteeing the loans of SPS, its wholly-owned subsidiary, from First Nationwide Bank ("FNB"). When SPS defaulted on the loans, Southmark transferred money to FNB on its guaranty obligation. Later, when Southmark filed bankruptcy, the trustee sought to avoid the transfer. Because the court found that Southmark as guarantor was not indebted to SPS in relation to the guaranty to FNB, there was no sufficient nexus, and therefore the transfer was unavoidable. *Id.; see also Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187 (5th Cir.1992) (where bank as garnishor stood in the shoes of the debtor's creditor who was also the garnishee, because the debt owed by the debtor to the garnishee was an "antecedent debt," there was a sufficient nexus and the transfer was preferential as to the garnishee); *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989) (beneficiary of the transfer must be a creditor on the debts underlying the transfer; a party is a creditor only to the extent that it has a claim, or contingent right to recover in bankruptcy, against the debtor).

■ The question at the summary judgment level, then, is whether there is an issue of material fact as to whether BFSI was a creditor on the debt underlying Crafts Plus' transfer of $5,000,000 to Foothill, made for the benefit of BFSI (which was indebted to

ries—the "two-transfer" doctrine, equitable considerations, and public policy—to reject it, and Congress eventually foreclosed the *Deprizio* line of cases with § 550(c). For our purposes here, we look to *Deprizio* mainly for the observations it made regarding the construction of § 547 and

§ 550, the meaning of "transfer" in particular. We also note that, in the instant case, we are not confronted with the critical problem found in *Deprizio* and § 550(c) insofar as the transfers that Crafts Plus seeks to avoid both occurred within ninety days of their chapter 11 petition.

Foothill). In light of the affidavit testimony submitted by Crafts Plus, the copy of the BFSI–Crafts Plus agreement, and the copies of the Norwest Bank wire transfers from Crafts Plus to Foothill, we find that there is at least such an issue of material fact.

### B) MUST THE TRANSFER BE AVOIDED AS TO BFSI?

We are asked whether, in a situation involving a transfer by a debtor to a noncreditor third party for the benefit of a creditor of the debtor, the debtor or trustee can subsequently avoid and recover the transfer under 11 U.S.C. §§ 547 and 550 in a single action against the initial transferee. That is, is establishing the existence of the avoidance action simply a part of recovery under § 550? Put another way, can one obtain a judicial determination avoiding a transfer without naming as a party the creditor for whose benefit the transfer was made? This requires a consideration of what § 550 means by "avoided transfer," and whether avoidance and recovery are to be broken down only conceptually, or must be broken down procedurally as well, at least in the context in which the transferee is not a creditor of the debtor.

Foothill argues that the precondition in § 550 that "a transfer [be] avoided" requires avoidance of the transfer as to BFSI, Crafts Plus' creditor in this matter. We disagree. The effect of the qualifying phrase "to the extent that a transfer is avoided" is "that liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as section 548(c)." 124 Cong Rec H11097 (daily ed. Sept. 28, 1978); S17414 (daily ed. Oct. 6, 1978); (remarks of Rep. Edwards and Sen. DeConcini). This suggests that "avoided" in § 550 is not in the past tense, but instead the present perfect. That is, § 550 does not require that the transfer be avoided in a temporally antecedent and separate procedure, but simply recognizes the limitations placed on recovery by the safe harbors for certain transfers found in provisions such as § 548(c). *See In re Sufolla, Inc.*, 2 F.3d at 982; *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d at 1196. Foothill relies on *In re Slack–Horner Found-*

*ries Co.*, 971 F.2d 577 (10th Cir.1992), in which the avoidance-and-recovery defendant had purchased at a tax auction property that had at one point belonged to the debtor. Reading *Slack–Horner* as sympathetically as possible, we do not find that it helps Foothill. In *Slack–Horner*, the problem is not necessarily that the trustee failed to avoid the transfer *as to the debtor's creditor* (the county tax authority), but that the trustee failed to avoid the transfer of property *of the debtor*. Because of the interplay of the attachment of a tax lien (a transfer *from the debtor* by operation of law) and the subsequent acquisition of the property at a tax auction by the § 550 defendant (a transfer of property of the state), the transfer of "property of the debtor" initially ran from the debtor to the taxing authority. Because the transfer to the purchaser was not technically the property of the debtor, that transfer was not avoidable. Therefore, even *Slack–Horner* may be reconciled with a reading of § 547 that focuses on transfers. Had the trustee there understood the mechanics of the transfer, as governed by underlying state property law, perhaps he or she would have chosen the right target: the transfer from the debtor to the taxing authority. In the instant case, Crafts Plus has plead a § 547 avoidance action as to the *transfer* of property of the debtor. So far, they have made the right move.

We acknowledge one case that Foothill does not cite, but that tends to support the proposition they advocate. *In re Wedtech Corp.*, 165 B.R. 140, 145 (Bankr.S.D.N.Y.). There, the bankruptcy court held that "[trustee] puts the cart before the horse by attempting to recover from [the] initial transferee without first proceeding against the [insider creditors] to establish an avoidable transfer ... We are unable to make such a determination because the [insider creditors] are not defendants in this action, and because [the trustee] has not asked us to determine that the transfers constituted avoidable preferences as to them." *Id.* However, the treatment of *Wedtech* on appeal in the district court might have blunted this holding. *Wedtech* involved transfers made both within ninety days of the debtor's petition and between ninety days and one year before the

petition. As to those transfers made within the ninety days, the appeals court found that there were issues of material fact as to whether the initial transferee, as a non-insider creditor, received preferential payments, and that the bankruptcy court erred in granting the initial transferee summary judgment. *In re Wedtech Corp.,* 187 B.R. 105, 109 (S.D.N.Y.1995). Then, with regard to the transfers made between ninety days and one year prior to the filing, the district court treated the bankruptcy court's grant of summary judgment simply as a rejection of the *Deprizio* doctrine and a rejection of the proposition that the trustee can recover, from a non-insider, transfers made for the benefit of an insider creditor between ninety days and one year prior to the bankruptcy. In affirming this rejection of *Deprizio,* the district court noted, *inter alia,* Congress' adoption of 11 U.S.C. § 550(c), which effectively overruled *Deprizio. Id.* at 109–10. Therefore, it is not clear how critical the presence or absence of certain entities in the adversary matter was to its final disposition.

Moreover, the cases cited by the bankruptcy court in *Wedtech* do not necessarily support the argument that the creditor for whose benefit the transfer was made must be a party to the avoidance action. *In re Sufolla, Inc.,* 2 F.3d 977 (9th Cir.1993) actually holds to the contrary. "The Bank [direct transferee] reads § 550(a), which permits recovery only 'to the extent that a transfer is avoided under section...547,' to mean that each element of § 547 must be satisfied with respect to the party from whom recovery is sought under § 550...Deprizio rejected this argument, holding that avoidability is an attribute of the transfer rather than of the creditor...We agree." *Sufolla* went on to predicate a recovery from the initial transferee under § 550 on the avoidance under § 547 of the transfer that preferred the creditors not subject to the avoidance action. In *In re Erin Food Services, Inc.,* 980 F.2d 792 (1st Cir.1992), did in fact hold that the trustee had to establish all the elements of an avoidance action under § 547. However, the only creditor against whom a colorable § 547 avoidance action could be brought was not a party to the case. Yet the court proceeded to engage in a full inquiry as to the avoidability of the *transfer,* only to find that the elements of § 547 had not been established. This simply illustrates what the Code tells us—that, to be avoided, a transfer must, *inter alia,* be "to or for the benefit of" a creditor. It does not require that the creditor be a party.

Foothill's Motion also seems to imply a reliance on the so-called "two-transfer" doctrine, which has been employed by courts to deny trustees seeking to recover property from one party when the transfer was made for the benefit of another, or to allow the trustee to recover from the creditor, often a guarantor, the value of the benefit conferred on that creditor by the debtor's direct transfer of property to a third party. In *Palmer v. Radio Corp. of America,* 453 F.2d 1133 (5th Cir.1971), the debtor owed on certain promissory notes to RCA. A third party purchased assets of the debtor and, as part of the transaction, assumed liability on the notes to RCA. The third party proceeded to make payment on the notes. Later, when the debtor filed bankruptcy, the trustee sought to avoid the transfer and to recover from RCA. The court allowed avoidance of the transfer and recovery from RCA, finding the assumption and payment by the third party to be an "indirect" preferential transfer to RCA, insofar as it reduced RCA's exposure and resulted in a diminution of the debtor's estate. In *In re Conard,* 806 F.2d 610 (5th Cir.1986), the debtor Conard owed an unsecured debt to the Burtons, who lent Conard the money to buy a pizza parlour. Later, the debtor sold the pizza operation to Pizza Hut, who assumed the obligation to make the debtor's remaining payments to the Burtons. When Conard went bankrupt, the trustee avoided the transfer and recovered from the Burtons. The court found the assumption of the debt avoidable since it indirectly benefitted the Burtons as creditors.

In *Matter of Compton Corp.,* 831 F.2d 586 (5th Cir.1987), the debtor, owing money to Blue Quail, an oil purveyor, caused its bank to issue a letter of credit in favor of Blue Quail, pledging certain assets to the bank as security. The court employed a two-transfer, or direct-indirect transfer theory. While the direct transfer of a security interest to

the bank issuing the letter of credit was sheltered under § 547(c), the indirect transfer to Blue Quail was avoided and recovery allowed. "The federal courts have long recognized that to constitute a preference, it is not necessary that the transfer be made directly to the creditor. If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt that another creditor of the same class, circuity of arrangement will not avail to save it. To combat such circuity, the courts have broken down certain transfers into two transfers, one direct and one indirect. The direct transfer to the third party *may be* valid and not subject to a preference attack. The indirect transfer, arising from the same action by the debtor, however, may constitute a voidable preference as to the creditor who indirectly benefitted from the direct transfer to the third party." *Id.* at 591–92 (internal quotes omitted, italics added).

However, the "two-transfer" approach has been criticized for being results-oriented and for confusing the text of the statute, and the Fifth Circuit retreated from the this approach in *Matter of Westex Foods, Inc.,* 950 F.2d 1187 (5th Cir.1992); *see also In re Robinson Brothers Drilling, Inc.,* 97 B.R. 77, at 79–80 (W.D.Ok.1988). One problem with the two-transfer approach is that it identifies "transfer" with "benefit." *See In re C–L Cartage Co., Inc.,* 899 F.2d at 1495; *Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186, 1195 (7th Cir.1989) ("While the lenders want to define transfer from the recipients' perspectives, the Code consistently defines it from the debtor's. A single payment therefore is one 'transfer', no matter how many persons gain thereby."). That is, the two-transfer approach implies that, because more than one party arguably derives a benefit

from the transfer of the property of the estate, conceptually there are several transfers. But from a multiplicity of benefits cannot be inferred a multiplicity of transfers. Again, § 547 addresses a single transfer in any instant, and it requires that the transfer be made "for the benefit of a creditor." As long as a transfer benefits a creditor and meets the other criteria of § 547, how many other parties such a transfer might benefit is not even relevant to whether the transfer can be avoided.

*Westex* noted that "[t]wo transfers arguably take place in the situation where there is an insider-guarantor because there are two distinguishable obligations that are concurrently discharged." *Westex* distinguished itself from this situation in that the *Westex* debtor was required to pay the garnishment creditor of one of the debtor's own creditors. In *Westex* the garnishment creditor stood in the shoes of the *debtor's* creditor. The question here might be whether the settlement arrangement by which Crafts Plus discharged its debt to BFSI by transferring funds to Foothill is more analogous to the guarantee situation or to the garnishment situation in *Westex.* Because the claim of a guarantor is contingent upon a default by the primary obligee, while the garnishment debtor is simply discharging what it owes to its creditor by paying that creditor's own debts, we think that the instant case is more akin to *Westex.*[2] Given the reluctance of the court to apply the two-transfer doctrine in *Westex,* then, we are not inclined to apply the doctrine in the instant case. *See In re Westex Foods, Inc.,* 950 F.2d at 1194. And based on the various criticisms of the two-transfer approach, insofar as this doctrine is a results-driven obfuscation of the Code, we are not sure that any such analogy is particularly significant.[3] *In re Marilyn Steinberg En-*

**2.** It is worth noting that *Westex* declined to apply the so-called "equity theory," which has been used to deny recovery of a transfer to a third-party creditor who seeks a guarantee when the transfer indirectly benefits the primary obligee, for similar reasons. "[Indirect transfer beneficiary's] debt to [direct transferee] exists regardless of whether [direct transferee] seeks to collect it from [debtor] or from another." *Id.* at 1194. The reasoning is that, unlike in the guaranty context, where there are two independent debts, neither contingent on the other, the direct trans-

feree has never bargained for the protection provided by a guarantor.

**3.** Significantly, the Code makes no distinction between "direct transferee" and "indirect transferee" (although § 101(50) does include in its definition of "transfer" "every mode, direct or indirect, ... of disposing of or parting with property...."). § 550(a)(1) *does* draw a distinction between "initial transferee" and "the entity for whose benefit such transfer was made." But instead of using this distinction to shelter one

*ters., Inc.*, 141 B.R. at 595–96 ("[T]he 'two-transfer' approach fails to acknowledge that by virtue of § 547(b)(1) a transfer may be avoided when made not just 'to' a creditor, but also when made 'for the benefit of' a creditor. In the latter instance someone other than the 'creditor' has received the transfer.").

We agree with *Westex* that the unambiguous text of sections 547 and 550 allow the possibility that the transfer from Crafts Plus to Foothill may be avoided and recovered. § 547 focuses exclusively on the transfer, not the creditor or beneficiary. Once it has been established that a qualified transfer has been made, § 550 provides for recovery against either the initial transferee (in this case Foothill) or "the entity for whose benefit such transfer was made" (BFSI).

■ Because of this transfer focus of § 547, we conclude that there is no need for the transfer in this case to be avoided *as against BFSI*, and hence no need either to bring an independent avoidance action against BFSI, or alternatively to name BFSI as a party in this litigation. While the targeted party in many cases is and will be the debtor's creditor (i.e. "the entity for whose benefit such transfer was made"), *see, e.g., In re Conard Corp.*, 806 F.2d 610 (5th Cir.1986), we also find cases in which the initial transferee is the sole defendant. *See In re Video Depot, Ltd.*, 127 F.3d 1195 (9th Cir.1997); *In re Sufolla, Inc.*, 2 F.3d 977 (9th Cir.1993); *In re Westex Foods, Inc.*, 950 F.2d 1187 (5th Cir.1992); *In re Erin Food Services, Inc.*, 980 F.2d 792 (1st Cir.1992); *In re C–L Cartage Co., Inc.*, 899 F.2d 1490 (6th Cir.1990). Such a reading comports with the transfer-oriented, almost declaratory nature of avoid-

ance under § 547. While the avoidance and recovery process is conceptually bifurcated, both steps can be taken in the same proceeding, and nothing in the text of §§ 547 and 550 require the joinder of the "entity for whose benefit such transfer was made" for the purposes of *avoiding* the transfer. § 550(a)(1) then expressly allows recovery against either the initial transferee or the preferred creditor.

■ The question for summary judgment then is whether there is a triable fact issue as to (1) whether there was a transfer that satisfies the elements of § 547(b) and (2) whether Foothill was either an initial transferee or the entity for whose benefit the transfer was made. Again, in light of the summary judgment record, including the affidavit of Carl Fellbaum averring that a preferential transfer was made, a copy of the settlement by which Crafts Plus agreed to transfer funds to Foothill on account of Crafts Plus' debt to BFSI, and copies of the relevant wire transfers, we conclude that there is at least a material issue sufficient for trial and that Foothill is not entitled to judgment as a matter of law.

### CRAFTS PLUS' CROSS MOTION FOR SUMMARY JUDGMENT

In its response to Defendant's Motion, Crafts Plus included a cross motion for summary judgment ("Cross Motion"). However, Foothill has served no answer to Crafts Plus' First Amended Complaint filed March 13, 1998. As Foothill argues, under Bankruptcy Rule 7012(a), if the court denies Foothill's Motion, the Defendant has ten days from notice of such denial to serve a responsive pleading.[4] Therefore, Crafts Plus' Cross

---

from the consequences of the other receiving a preferential transfer, § 550(a) expressly allows the trustee, once the transfer is declared avoided, to recover the property or its value from *either*. Congress has provided certain safe harbors as to "transfers" in those sections governing the avoidance of transfers, and has provided in § 550(b) and (c) safe harbors for certain types of transferees. Congress has *not* designed any such shelters based on a direct-indirect transfer theory.

**4.** The trustee argues that Rule 12 permits the use of Rule 56, suggesting that summary judgment is possible at this early stage, because once a defendant has moved for summary judgment, Rule 56

permits the plaintiff to cross plead for summary judgment. But such a ruling would require a defendant to put on summary judgment *proof* to defend against such a motion, *before* it has even filed a pleading to respond to the complaint. The effect of such a rule would be to place the proof cart before the pleading horse. Moreover, it would force the defendant to join issue before its answer date, truncating the time which Rule 12 otherwise affords a defendant to answer after denial of a Rule 12 motion. It could also compel a party desiring to contest jurisdiction to submit to that jurisdiction. We doubt that the Supreme Court ever intended such ultimate consequences

Motion is premature, in that upon entry of the present order, Foothill will have ten days to serve an answer to Crafts Plus' First Amended Complaint. Accordingly, we have denied Crafts Plus' Cross Motion.

### *Conclusion*

In light of the foregoing, we deny both Defendant Foothill's Motion for Summary Judgment and Crafts Plus' Cross Motion for Summary Judgment.

So **ORDERED**.

to flow from a defendant's making use of Rule 12's sensibly flexible rule permitting motions to dismiss to be treated as motions for summary judgment.