In re FLASHCOM, INC., Debtor.

Carolyn A. Dye, Liquidating
Trustee, Plaintiff,

v.

Andra Sachs; Communications Ventures III, LP; Communications Ventures III CEO & Entrepreneurs' Funds LP; Mayfield IX; Mayfield Associates Funds IV; David Helfich; Todd Brooks; Bradford Sachs; Richard Rasmus; and Kevin Fong, Defendants.

Bankruptcy No. SA 00–19215 JR.
Adversary No. SA 02–01620 JR.

United States Bankruptcy Court,
C.D. California.

Feb. 5, 2007.

Richard H. Golubow, Winthrop Couchot, Newport Beach, CA, for Debtor.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

### I. INTRODUCTION

On July 22, 2002, Carolyn Dye ("Movant") filed an amended complaint against the defendants (collectively, "Defendants"), in part, to avoid and recover the debtor's transfer of $9 million to Andra Sachs ("Andra") on February 23, 2000 (the "Transfer") under 11 U.S.C. §§ 547(b) and 550.[1] Thereafter, Movant and Andra reached a settlement. In furtherance of the settlement, Andra consented to the entry of a judgment avoiding the Transfer under § 547(b) as a preferential transfer.

On August 25, 2006, Movant filed a motion (the "Motion") for partial summary judgment, citing § 550, to recover $9 million from Communications Ventures III, LP, Communications Ventures III CEO & Entrepreneurs' Funds, LP, Mayfield IX, and Mayfield Associates Funds IV (collectively, "Respondents") as entities for whose benefit the Transfer was made. Respondents opposed. Following a hearing on December 11, 2006, I took the

matter under submission to determine whether the entry of the stipulated judgment precludes Respondents from defending the avoidability of the Transfer.

### II. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. § 157(b)(1). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (F), (O).

### III. STATEMENT OF FACTS

Andra and her husband, Brad Sachs ("Brad"), founded Flashcom, Inc. ("Debtor"), a telecom startup, during the late 1990s. In June 1999, Respondents invested approximately $15 million for Debtor's Series A preferred shares. As a result, David Helfich, Todd Brooks, and Kevin Fong (collectively, the "Directors"), alleged principals of Respondents, were appointed to Debtor's board of directors.

Concerned with Andra's continued involvement in Debtor, Respondents entered into discussions with Andra for her removal. This resulted in a Loan and Pledge Agreement (the "Loan Agreement"), dated September 3, 1999, whereby Respondents loaned Andra $1 million (the "Loan") and agreed to loan Andra an additional $9 million upon Debtor obtaining at least $30 million in Series B financing. The Loan was evidenced by four non-recourse promissory notes (the "Notes"), and secured by Andra's interest in 500,000 shares of Debtor's common stock. Respondents and Andra also executed a series of four "Purchase Option" agreements and four "Put Option" agreements (collectively, the "Options"). In effect, the Options provided for the transfer of $1 million worth of Andra's

---

**1.** Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101–1330, prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Act"), Pub.L. 109–8, 119 Stat. 23, because this case was filed before the Act's effective date (October 17, 2005), and to the Federal Rules of Bankruptcy Procedure (the "Rules"), Rules 1001–9036.

shares to Respondents in satisfaction of the Loan upon Debtor obtaining the above financing.[2]

On February 8, 2000, Debtor, Respondents, and Andra restructured the arrangement contemplated by the Loan Agreement and the Options. Respondents and Andra executed an amendment to the Loan Agreement (the "Amendment"), terminating the parties' obligations under the Options. Also, Debtor, Respondents, and Andra executed a Stock Purchase Agreement (the "Stock Purchase Agreement"), reinstating Respondents obligation to purchase $1 million worth of Andra's shares of Debtor's common stock, and requiring Debtor to redeem $9 million worth of Andra's shares at 85% of the per share price.

Eight days later, Debtor and the Series B investors executed a Series B Preferred Stock Purchase Agreement (the "Series B Agreement"), providing for the purchase of $84 million of Debtor's Series B preferred stock at $6.57 per share. In addition, the Series B Agreement provided that $9 million of the proceeds were to be used to redeem Andra's stock. On February 23, 2000, Debtor paid Andra $9 million to redeem 1,611,604 shares at a redemption price of $5.58 per share.

On December 8, 2000, Debtor filed a voluntary chapter 11 petition. Thereafter, Debtor filed a plan of reorganization that was confirmed on December 11, 2001.

Debtor's plan designated Movant as the liquidating trustee for Debtor's estate.

On July 11, 2002, Movant commenced this adversary proceeding (the "Stock Redemption Proceeding") against Defendants. On July 22, 2002, Movant filed an amended complaint (the "Complaint"). In the Complaint, Movant alleged that Defendants either orchestrated or participated in certain unauthorized, improper, or otherwise avoidable agreements and transfers with Debtor between September 1999 and February 2000. Specifically, Movant asserted that the Transfer was avoidable as a preferential transfer to or for the benefit of Andra, and recoverable from Andra, as the initial transferee, or Respondents and the Directors, as entities for whose benefit the Transfer was made.

On September 2, 2005, Movant, Andra, and others reached a global settlement (the "Global Settlement Agreement"). The Global Settlement Agreement was designed to resolve the Stock Redemption Proceeding as to Andra.[3] By order entered November 1, 2005, I approved the Global Settlement Agreement. On August 8, 2006, a judgment (the "Stipulated Judgment") was entered, providing that: "(a) [t]he wire transfer by Flashcom, Inc. of $9 million made on February 23, 2000 to Memory Max, dba a Taste of Napa, which was made for the benefit of Andra Sachs,

---

**2.** Specifically, pursuant to the Purchase Options, Respondents had the right to purchase that number of shares equal to the amount of the Notes at 85% of the per share price. The Put Options, on the other hand, provided that Andra had the right to sell or put her shares to Respondents. Under both the Purchase Options and the Put Options, Respondents had the right to obtain the shares by applying the amounts due on the Notes.

**3.** In pertinent part, the Global Settlement Agreement provided that Andra, without admitting liability and in furtherance of the

Global Settlement Agreement, shall agree to the entry of a judgment in the amount of $9 million under § 547(b) in favor of Movant, and "Andra shall sign a second stipulated judgment pursuant to § 550(a) for recovery against Andra on the [Movant] Avoidance Judgment, which will be entered if Andra defaults upon her obligation to pay Movant $50,000 or $62,000 depending upon the amount recovered by Movant from [Respondents and the Directors] in the Stock Redemption Proceeding."

is avoided as a preferential transfer pursuant to 11 U.S.C. § 547(b)."

On August 25, 2006, Movant moved for partial summary judgment that, pursuant to § 550, she may recover $9 million from Respondents. Movant argued that entry of the Stipulated Judgment avoided the Transfer to the extent of $9 million, and therefore, she is entitled to recover $9 million from Respondents as entities for whose benefit the Transfer was made. Respondents opposed the Motion, arguing that they have the right to litigate the avoidability of the Transfer as a preference, and that they were not the beneficiaries of the Transfer. Following a hearing on December 11, 2006, I took the matter under submission to determine: (A) whether the entry of the Stipulated Judgment precludes Respondents from defending the avoidability of the Transfer under § 547(b); and (B) whether Respondents are entities for whose benefit the Transfer was made.

## IV. DISCUSSION

### A. *Entry of the Stipulated Judgment cannot Deprive the Respondents of Their Right to Defend the §§ 547 and 550 Claims Asserted against Them.*

Section 547(b) of the Code permits a bankruptcy trustee to avoid certain preferential pre-petition transfers of interests in property of the debtor. Section 550 provides in relevant part that:

[T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a)(1)-(2). Put simply, § 547(b) specifies a type of transfer that may be avoided by a bankruptcy trustee. *See Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+),* 220 B.R. 331, 334 (Bankr.W.D.Tex.1998). Separately, § 550 identifies the parties against whom a trustee may recover the avoided transfer for the benefit of the estate. *Id.*

Movant argues that the entry of the Stipulated Judgment avoided the Transfer to the extent of $9 million. For that reason, Movant argues that she is no longer required to establish the avoidability of the Transfer but may proceed to recover the value of the Transfer from Respondents under § 550(a), provided that she can show that they were entities for whose benefit the Transfer was made. Respondents reply that they are not bound by the Stipulated Judgment, and more importantly, that they have the right to litigate the avoidability of the Transfer.

This appears to be a matter of first impression in the Ninth Circuit. Movant has not provided any direct authority for her position.[4] However, Movant asserts

---

4. Movant relies heavily on *Danning v. Miller (In re Bullion Reserve of North America),* 922 F.2d 544 (9th Cir.1991), to support her position. In *Danning,* the trustee entered into an agreement with the initial transferee stipulating to the avoidability of the initial transfer under § 548. *Id.* at 546. The trustee then filed suit against the immediate transferee to recover the fraudulent transfer. *Id.* at 546. Movant finds *Danning* persuasive because the trustee established the avoidance of a transfer by stipulation with the initial transferee and then sought to recover from a different transferee under § 550(a). However, in *Danning,* the immediate transferee, subject to the § 550(a) action, conceded that the transfer

that a plain reading of §§ 547(b) and 550(a), and the separation between the concepts of avoidance and recovery compel summary judgment in her favor.[5]

■ As with any statutory construction dispute, I must begin with language of the statute. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). "[The] first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). "[I]f the statutory language is unambiguous and the statutory scheme is coherent and consistent[,]" then the court must cease its inquiry, and simply enforce the statute as written. *Id.* (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)) (internal quotation marks omitted); *see also Perlman v. Catapult Entertainment, Inc. (In re Catapult Entertainment, Inc.)*, 165 F.3d 747, 754 (9th Cir. 1999). Only in rare cases may a court inquire beyond the plain language of a statute. *Ron Pair*, 489 U.S. at 242, 109 S.Ct. 1026; *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341, 117 S.Ct. 843.

The language used in § 550(a) is clear. Once a trustee proves that the elements of an avoidance statute, such as § 547, are satisfied "the unambiguous language of § 550(a) then identifies the party responsible for repayment of the preference." *Official Unsecured Creditors Comm. of Sufolla, Inc. v. U.S. Nat'l Bank of Oregon (In re Sufolla)*, 2 F.3d 977, 980 (9th Cir.1993) (citing *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr.)*, 874 F.2d 1186, 1194 (7th Cir.1989)); *see also Kendall v. Sorani (In re Richmond Produce Co., Inc.)*, 195 B.R. 455, 463 (N.D.Cal. 1996). The trustee may recover from "the initial transferee ... or the entity for whose benefit the transfer was made ... or ... any immediate or mediate transferee...." 11 U.S.C. § 550(a).

This conclusion does not end my inquiry. Importantly, neither the Code nor the Rules specify whether a § 550(a) transferee has the right to litigate and/or raise defenses to the avoidability of a transfer as a preference. *See General Motors Acceptance Corp. v. Rodgers (In re Laguna Beach Motors, Inc.)*, 148 B.R. 317, 320 n. 4 (9th Cir. BAP 1992) (stating that the Code contains no language limiting who can raise the defenses provided in § 547(c)). Rather, the Code and Rules are silent, and hence ambiguous, leaving the applicable statutory language reasonably susceptible to conflicting interpretations.

---

was avoidable under § 548. *Id.* at 547. Therefore, the Ninth Circuit was "faced with the narrow issue of whether Miller was a 'transferee' of the $1.5 million within the meaning of section 550(a)(1) or section 550(a)(2)." *Id.* The Ninth Circuit did not address whether the immediate transferee was precluded from litigating the avoidability of the transfer, and therefore *Danning* is of little help to the present dispute.

**5.** Both the House and Senate Reports accompanying the Bankruptcy Reform Act of 1978 state that § 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R. Rep. No. 95–595, at 375 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6331; S. Rep. No. 95–989, at 90 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876.

Where a statute is ambiguous, a court may look beyond the statutory language to the legislative history, and the purpose of the statutory scheme to determine the intent of Congress. *United States v. Buckland*, 289 F.3d 558, 565 (9th Cir.2002) (quoting *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990)); *United States v. Davidson*, 246 F.3d 1240, 1246 (9th Cir. 2001). Here, these tools for determining congressional intent are of little assistance because the congressional record and the legislative history are silent with respect to the issue before the court.

However, another well-settled canon of statutory construction is not only helpful, but controlling. "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems." *I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citation omitted); *Edward J. De-Bartolo Corp. v. Florida Gulf Coast Bldg. and Const. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). Courts do not have "the unfettered prerogative to rewrite a statute in order to save it or to 'ignore the legislative will' behind it." *Buckland*, 289 F.3d at 564 (quoting *Miller v. French*, 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000)). The canon of constitutional doubt permits a court to avoid constitutional concerns "only where the saving construction is not plainly contrary to the intent of Congress." *Miller*, 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (quoting *Edward J. DeBartolo Corp.*, 485 U.S. at 575, 108 S.Ct.

1392 (1988)) (internal quotation marks omitted). Where the intent of Congress is clear, a court must give effect to that intent. *Miller*, 530 U.S. at 336, 120 S.Ct. 2246.

The Due Process Clause of the Fifth Amendment provides that "no person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A person's right to due process of law is fundamental to our jurisprudence, *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914), and for more than a century, the central requisite of due process has been the right to a meaningful opportunity to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (quoting *Baldwin v. Hale*, 1 Wall. 223, 68 U.S. 223, 233, 17 L.Ed. 531 (1863)). The purpose for providing such due process is clear: to prevent the mistaken or unfair deprivation of one's property. *Fuentes*, 407 U.S. at 81, 92 S.Ct. 1983. Thus, a person has the right to be heard whenever his life, liberty, or property is at stake in a judicial proceeding. *See Ownbey v. Morgan*, 256 U.S. 94, 111, 41 S.Ct. 433, 65 L.Ed. 837 (1921); *see also Dusenbery v. U.S.*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993)).

To interpret §§ 547 and 550 Movant's way would raise substantial due process concerns, and would lead to anomalous results. *See Thompson v. Jonovich (In re Food & Fibre Protection, Ltd.)*, 168 B.R. 408, 415–16 (Bankr.D.Ariz.1994). Movant sued Respondents to avoid and recover the Transfer.[6] As a result, Movant has clearly

---

**6.** Movant emphasizes that the § 547 claim was asserted against Andra, only, and not Respondents. However, a review of the Complaint does not support Movant's position.

Nowhere in the Complaint does it specify that certain claims are asserted against Andra or Respondents, only. Rather, the Complaint

put Respondents' property at stake. If Movant prevails, Respondents will be deprived of $9 million. Moreover, Respondents' ability to defend the § 550 claim is of little consolation. The avoidability of the Transfer is a prerequisite to Respondents' potential liability. Once it is determined that a preferential transfer was made, Movant need only show that Respondents received some benefit to hold them strictly liable. *See General Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.)*, 185 B.R. 801, 808 (9th Cir. BAP 1995) (citing *Danning*, 922 F.2d at 547) (holding that initial transferees are strictly liable for an avoided transfer).

■ Based on the foregoing, I conclude that Respondents have a constitutional right to defend the § 547(b) claim asserted against them before they can be deprived of the value of the property transferred under § 550(a). I note that every court to address this issue has, for one reason or another, held that a stipulated or default judgment entered in an avoidance action does not preclude the defendants in a recovery action from disputing the avoidability of the transfer and raising appropriate defenses. *See Thompson*, 168 B.R. at 415–16; *see also Morris v. Emprise Bank (In re Jones Storage and Moving, Inc.)*, 2005 WL 2590385, at *4–5, 2005 Bankr.LEXIS 662, *14–16 (Bankr.D.Kan.2005). Accord-

ingly, it would be inherently unfair and inappropriate for this court to deny Respondents this fundamental right based on a settlement reached by Sachs, a co-defendant, for less than 1% of the requested recovery. Such an outcome would, for obvious reasons, open the door to potential substantial abuse.[7]

This interpretation is not contrary to the relevant legislative history, the overall statutory scheme, and Ninth Circuit precedent.[8] Avoidance and recovery remain conceptually bifurcated as Congress intended. H.R. REP. No. 95–595; S. REP. No. 95–989; *see also Sufolla*, 2 F.3d at 980. Sections 547 and 550 remain distinct claims, requiring the litigation of different elements and defenses with different statutes of limitation.[9] Furthermore, avoidability remains an attribute of the transfer. *See Sufolla*, 2 F.3d at 982 (quoting *Deprizio*, 874 F.2d at 1195). Movant is not required to prove that the Transfer is avoidable as to Respondents, but that each element of § 547(b) is satisfied.

As noted by numerous courts, § 547 addresses transfers, and not creditors or transferees. *See Crafts Plus +*, 220 B.R. at 334. That is, § 547 does not specify the proper defendant for a preference action. *Id.* Rather, § 550 identifies who the trustee may proceed against. Moreover,

and each claim therein were filed against Defendants.

7. For example, a potential transferee might stipulate to the avoidance of a transfer in exchange for a trustee's promise to seek recovery from third parties. *See Morris*, 2005 WL 2590385, *5, 2005 Bankr.LEXIS 662, *16.

8. The Ninth Circuit's decision in *Sufolla*, upon which Movant relies, does not compel a contrary result. In that case, the Ninth Circuit was not forced to decide the issue currently before the court because, at trial, the defendant was afforded the opportunity to

litigate the avoidability of the transfer and raise any defenses thereto. *See Sufolla*, 2 F.3d at 978–79.

9. Movant makes much of the fact that § 550(f)(1) provides that a proceeding to recover a transfer must be commenced not later than the earlier of one year after the avoidance of the transfer, or the time the case is closed or dismissed. However, my interpretation does not render this subsection meaningless because a trustee has a specified time to avoid a transfer and an additional year after avoidance to recover the transfer under § 550.

avoidance and recovery, while conceptually separate, do not occur in a vacuum. They are intertwined, as both are typically required to make the estate whole. As such, it is reasonable to believe that Congress intended the trustee to avoid and recover a transfer against the same entity, whether it be in one proceeding or two.[10]

Lastly, Respondents have not waived their fundamental right to due process. Respondents were named defendants to each cause of action in the Complaint. Similarly, Respondents answered without limitation. True, the Global Settlement Agreement was approved after notice and hearing at which Respondents were present. However, neither the court nor Respondents were aware of Movant's intent to use the Stipulated Judgment to terminate Respondents' right to litigate the preference claim. In fact, Movant indicated that approval of the Global Settlement Agreement would not affect her claims against Respondents. As such, the hearing on the Global Settlement Agreement did not provide Respondents with a meaningful opportunity to be heard.

In sum, to recover the amount of the Transfer from Respondents, Movant must prove the elements of avoidance under § 547(b) by a preponderance of the evidence. Movant has failed to provide any evidence regarding the avoidability of the Transfer. Accordingly, the Motion is denied.

### B. *Genuine Issues of Material Fact Exist Whether Respondents are Entities for Whose Benefit the Transfer was made.*

As stated above, to the extent a transfer is avoided, the trustee may recover the property transferred, or its value, from

"(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(1)-(2). Because Andra is the initial transferee, recovery of the Transfer under § 550 from Respondents is not appropriate unless they constitute an "entity for whose benefit such transfer was made." "Two frequently cited examples of an entity for whose benefit the transfer was made are (1) a guarantor of the debtor and (2) a debtor of the initial transferee." 5 L. KING, COLLIER ON BANKRUPTCY ¶ 550.02[4] (15th ed. rev.2001) (citing *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir.1988) ("The paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor—someone who receives the benefit but not the money.")). Importantly, the "entity need not actually benefit, so long as the transfer was made for his benefit." *Danning*, 922 F.2d at 547.

Movant argues that Respondents are entities for whose benefit the Transfer was made because Debtor made the Transfer to extinguish Respondents' obligations to Andra. Movant is correct that after execution of the Loan Agreement, Andra had a contingent right to payment from Respondents. Therefore, as contended by Movant, Respondents were debtors of Andra, and potential beneficiaries of the Transfer under § 550. *See* 11 U.S.C. § 101(5)(A), (12). However, Respondents argue that the Amendment and the Stock Redemption Agreement, executed fifteen days prior to the Transfer, terminated Respondents obligation to pay Andra $9 million, and as a result, Debtor made the Transfer to satisfy its contractual obli-

---

**10.** This belief is further supported by § 547(g), which provides that "the creditor or party in interest against whom *recovery or* *avoidance* is sought has the burden of proving the nonavoidability of a transfer...." 11 U.S.C. § 547(g) (emphasis added).

gation to pay Andra $9 million, as opposed to benefitting Respondents.

The Amendment, standing alone, did not terminate Respondents' obligation to loan Andra $9 million contingent on Debtor obtaining the requisite financing. Rather, the Amendment terminated only the Options, requiring Respondents to purchase $1 million worth of Andra's stock and requiring Andra to sell the same in satisfaction of the Loan. Arguably, Respondents' contingent $9 million loan obligation remained unaffected. The Amendment stated that, except as expressly modified, the terms of the Loan Agreement remained in full force.

■ Debtor was also indebted to Andra. Concurrently with the execution of the Amendment, Debtor, Andra, and Respondents executed the Stock Redemption Agreement. Debtor agreed to redeem $9 million worth of Andra's shares. Respondents were neither guarantors nor co-obligors of Debtor's obligation to Andra. Moreover, the Stock Redemption Agreement did not cross reference the $9 million loan, and specifically, did not provide for the release and/or satisfaction of Respondents' loan obligation to Andra upon the Transfer. Therefore, a dispute of fact exists whether Debtor's redemption of Andra's shares was intended to release Respondents' obligation to loan Andra $9 million.

In sum, the parties dispute whether the execution of the Amendment and the Stock Purchase Agreement was intended to extinguish Respondents' obligation to loan Andra $9 million, and ultimately, purchase $9 million worth of Andra's stock. Neither agreement provides for the satisfaction of Respondents' loan obligation upon their execution or upon the Transfer. Lastly, while the restructuring of the deal to buyout Andra enabled Respondents to purchase Series B Preferred shares, as op-

posed to Andra's common stock, genuine issues of fact exist whether Debtor was solvent at the time of the Transfer, and therefore, whether Respondents received any real benefit from obtaining preferred shares. Accordingly, genuine issues of fact exist whether the Transfer was made to benefit Respondents, and specifically, to satisfy Respondents' contingent loan obligation to Andra.

## V. CONCLUSION

The entry of the Stipulated Judgment did not avoid the Transfer. Respondents have a constitutional right to defend the claims asserted against them before they can be deprived of their property. Therefore, to recover the Transfer from Respondents, Movant must prove the elements of § 547. Moreover, genuine issues of material fact remain as to whether Defendants are entities for whose benefit the Transfer was made. Accordingly, the Motion is denied.

This memorandum decision shall constitute my findings of fact and conclusions of law.